UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

SAMUEL LEE STATEN, III,
  Plaintiff,

v.          Case No.  3:17cv697/LAC/EMT

SGT. D. BARLOW, et al.,
  Defendants.
_____/

## REPORT AND RECOMMENDATION

  This prisoner civil rights case, filed under 42 U.S.C. § 1983, is before the court on Defendants' motion for summary judgment and evidentiary materials in support thereof (ECF No. 56).  Plaintiff filed a response, with evidentiary materials, in opposition to the motion (ECF No. 66).  The matter is referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(C).  The undersigned concludes that the summary judgment motion should be granted in part and denied in part.

I.  BACKGROUND AND PROCEDURAL HISTORY

  Plaintiff Samuel Lee Staten, III ("Staten") is an inmate of the Florida Department of Corrections confined at Santa Rosa Correctional Institution.  Staten sues three prison officials at Santa Rosa C.I.:  Sergeant D. Barlow, Officer V. Mitchell, and Officer King (Amended Complaint, ECF No. 10).  Staten claims that

on April 22, 2017, Defendants used excessive force on him in violation of the Eighth Amendment (*id.*).  As relief, Staten requests compensatory and punitive damages (*id.*).  Defendants move for summary judgment claiming that Staten's requests for compensatory and punitive damages must be dismissed pursuant to 42 U.S.C. § 1997e(e), and that they are entitled to judgment on Staten's Eighth Amendment claims because he did not request nominal damages (ECF No. 56).

II.    DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

    A.    Legal Standards

        1.    Summary Judgment

To prevail on a motion for summary judgment, the moving party must show that the nonmoving party has no evidence to support his or her case or present affirmative evidence that the nonmoving party will be unable to prove his or her case at trial.  *See* Celotex Corp. v. Catrett, 477 U.S. 317, 322–23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).  If the moving party successfully negates an essential element of the nonmoving party's case, the burden shifts to the nonmoving party to come forward with evidentiary material demonstrating a genuine issue of fact for trial.  *Id.* The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  Anderson v. Liberty

Lobby, Inc., 477 U.S. 242, 247–48, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  A dispute is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*, 477 U.S. at 248.  A fact is "material" if it "might affect the outcome of the suit under the governing law."  *Id.*  The nonmoving party must show more than the existence of a "metaphysical doubt" regarding the material facts.  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986).  Speculation or conjecture from a party cannot create a genuine issue of material fact.  *See* Cordoba v. Dillard's, Inc., 419 F.3d 1169, 1181 (11th Cir. 2005).  "A mere scintilla of evidence in support of the nonmoving party will not suffice to overcome a motion for summary judgment." Young v. City of Palm Bay, Fla., 358 F.3d 859, 860 (11th Cir. 2004); *see also* Celotex Corp., 477 U.S. at 324.  The nonmoving party must either point to evidence in the record or present additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency.  *See* Celotex Corp., *supra*; Owen v. Wille, 117 F.3d 1235, 1236 (11th Cir. 1997) (Rule 56 requires the nonmoving party to go beyond the pleadings and by his or her own affidavits, or by the depositions, documents, affidavits or declarations, admissions, interrogatory answers or other materials on file designate specific facts showing that there is a genuine issue for trial); Hammer v. Slater, 20 F.3d 1137 (11th Cir. 1994).

Regarding the factual positions asserted by the parties, the court must apply

the standard set forth in Rule 56(c) of the Federal Rules of Civil Procedure, which

provides in relevant part:

> **(1) Supporting Factual Positions**.  A party asserting that a fact cannot
> be or is genuinely disputed must support the assertion by:
>
>> **(A)** citing to particular parts of materials in the record, including
>> depositions, documents, electronically stored information,
>> affidavits or declarations, stipulations (including those made for
>> purposes of the motion only), admissions, interrogatory answers,
>> or other materials; or
>>
>> **(B)** showing that the materials cited do not establish the absence
>> or presence of a genuine dispute, or that an adverse party cannot
>> produce admissible evidence to support the fact.
>> ....
>
> **(4) Affidavits or Declarations**. An affidavit or declaration used to
> support or oppose a motion must be made on personal knowledge, set
> out facts that would be admissible in evidence, and show that the affiant
> or declarant is competent to testify on the matters stated.

Fed. R. Civ. P. 56(c) (2010).

Facts asserted in hearsay statements which are not subject to a hearsay

exception, and thus would not be admissible in evidence, are insufficient to show

that a fact is genuinely disputed.  "The most obvious way that hearsay testimony can

be reduced to admissible form is to have the hearsay declarant testify directly to the

matter at trial."  Jones v. UPS Ground Freight, 683 F.3d 1283, 1294 (11th Cir. 2012)

(citing Pritchard v. S. Co. Servs., 92 F.3d 1130, 1135 (11th Cir. 1996)).  If a fact

cannot be presented in a form that would be admissible in evidence, it cannot be used for purposes of summary judgment.  *See* Macuba v. Deboer, 193 F.3d 1316, 1322 (11th Cir. 1999); *see* Fed. R. Civ. P. 56(c).

If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court will consider the fact undisputed for purposes of the motion for summary judgment or grant summary judgment if the moving party's motion and supporting materials— including the facts considered undisputed—show that the moving party is entitled to it.  *See* Fed. R. Civ. P. 56(e)(2, 3).

Evidence presented by the nonmoving party in opposition to the motion for summary judgment, and all reasonable factual inferences arising from it, must be viewed in the light most favorable to him or her.  *See* Adickes v. S. H. Kress & Co., 398 U.S. 144, 157, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970); Jones v. Cannon, 174 F. 3d 1271, 1282 (11th Cir. 1999).  Nonetheless, the nonmoving party still bears the burden of coming forward with sufficient evidence of every element that he or she must prove.  *See* Celotex Corp., 477 U.S. at 317.  A motion for summary judgment should be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); Celotex Corp., 477 U.S. at 322.

2. <u>Limitation on Recovery Imposed by 42 U.S.C. § 1997e(e)</u>

Title 42 U.S.C. § 1997e(e) provides: "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." The Eleventh Circuit has decided that the phrase "Federal civil actions" means all federal claims, including constitutional claims. *See* <u>Napier v. Preslicka</u>, 314 F.3d 528, 532 (11th Cir. 2000) (citation omitted). Where a prisoner plaintiff alleges constitutional violations, he is prevented under § 1997e(e) from seeking punitive or compensatory damages in the absence of a physical injury. *See* <u>Brooks v. Warden</u>, 800 F.3d 1295, 1307 (11th Cir. 2015) (citing <u>Al-Amin v. Smith</u>, 637 F.3d 1192, 1199 (11th Cir. 2011) (punitive damages), and <u>Harris v. Garner</u>, 190 F.3d 1279, 1286 (11th Cir. 1999) (compensatory damages), *reh'g en banc granted and opinion vacated*, 197 F.3d 1059 (11th Cir. 1999), *opinion reinstated in relevant part en banc*, 216 F.3d 970).

B. <u>Material Facts</u>

As this case comes before the court on Defendants' motion for summary judgment, the court is required to view the facts in the light most favorable to Staten, the nonmoving party. *See* <u>Hairston v. Gainesville Sun Publ'g Co.</u>, 9 F.3d 913, 918 (11th Cir. 1993); *see also* <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 679, 129 S. Ct. 1937, 173

L. Ed. 2d 868 (2009). The court does so here, referring to Staten's verified Amended Complaint (ECF No. 10) and taking those facts from the parties' pleadings and summary judgment materials of record.[1] *See* <u>Perry v. Thompson</u>, 786 F.2d 1093, 1095 (11th Cir. 1986) (holding that specific facts pled in a sworn complaint must be considered in opposition to summary judgment); Fed. R. Civ. P. 56(c); N.D. Fla. Loc. R. 56.1(B), (C), (F). The court includes only those facts relevant to the issue presented in Defendants' motion for summary judgment, *i.e.*, what, if any, physical injury Staten suffered as a result of Defendants' use of force on April 22, 2017. Matters stated below as "facts" for purposes of summary judgment review may not be the actual facts. *See* <u>Montoute v. Carr</u>, 114 F.3d 181, 182 (11th Cir. 1997).

On April 22, 2017, Defendants conducted a use of force on Staten because he refused to remove a towel covering his cell window (Amended Complaint at 5; Defendants' Statement of Material Facts). Staten alleges the following occurred during the use of force: (1) Defendants Mitchell and King pulled him off the top bunk in his cell and slammed him to the floor (Defendants state Staten jumped down off the top bunk toward them when they entered the cell (*see* Motion for Summary

---

[1] This statement of facts includes factual statements made by Staten in his General Affidavit, submitted as part of Exhibit E attached to his summary judgment response (ECF No. 66, Ex. E), but this statement of facts does not include factual statements made in Staten's response itself, because the response is neither verified under 28 U.S.C. § 1746, nor sworn under oath under penalty of perjury. *See* <u>Arthur v. King</u>, 500 F.3d 1335, 1343 (11th Cir. 2007) (holding that district court properly declined to consider unsworn affidavit filed in support of plaintiff's motion to alter or amend judgment).

Judgment, Ex. C, Report of Force Used, ECF No. 56-4 at 2–3)); (2) Defendant

Mitchell punched him in the face; (3) Defendant King kicked him in the body; (4)

Defendant Mitchell laid on Staten's back and bent his left wrist to cuff it; (5)

Defendant Barlow kicked him in the face six or seven times and "stomped" his head

to the floor; (6) Defendant Mitchell rolled him on his side and punched him in his

penis; (7) Defendant King cuffed his right hand; and (8) Defendant Mitchell laid

back on top of him until Barlow directed Mitchell and King to lift him off the floor

(*see* Amended Complaint at 5–6). Defendants immediately escorted Staten to the

medical department for a medical assessment (*id.*). A nurse observed the following

injuries: a hematoma on his forehead, a 2-centimeter laceration on his left brow,

swelling of his lower lip, and a 1-centimeter laceration under his lower lip (Motion

for Summary Judgment, Ex. B-2, Abrasion/Laceration Protocol, dated 4/22/17, ECF

No. 56-3 at 19–20; Emergency Room Record, dated 4/22/17, ECF No. 56-3 at 42–

43). The nurse noted minimal to moderate bleeding (*id.*). Staten reported facial pain

at a level of 2 on a scale of 1 to 10, with 10 being the highest pain level (*id.*). The

nurse cleaned and dressed Staten's injuries, instructed him on wound care, and

instructed him to return to medical if his symptoms worsened or new symptoms

developed (*id.*).

Staten alleges the wounds to his mouth and forehead lasted two weeks (Amended Complaint at 6). He alleges he suffered pain in his genitals for several days (*id.*). Staten also alleges he suffers ongoing intense pain in his back and neck (*id.*).

Staten's medical records show that he sought medical treatment for back pain prior to the use of force at issue in this case. As early as February 27, 2017 (two months prior to the use of force on April 22, 2017), Staten was seen by a doctor for complaints of back pain (Motion for Summary Judgment, Ex. B-2, Clinician's Order Sheet, dated 2/27/17, ECF No. 56-3 at 28). The doctor prescribed ibuprofen and analgesic balm (*id.*).

In March of 2017, Staten was seen by a nurse for complaints of pain in his neck and back (Motion for Summary Judgment, Ex. B-2, Back Pain Protocol, ECF No. 56-3 at 23–24). Staten reported his pain level as 6, and that the pain started on February 15, 2017 (*id.*). The nurse instructed Staten to limit his activity until the discomfort improved, and scheduled a follow-up appointment with a doctor (*id.*).

On April 5, 2017, Staten was seen by a doctor for complaints of periodic back pain (Motion for Summary Judgment, Ex. B-2, Chronological Record of Health Care, dated 4/5/17 and Clinician's Order Sheet dated 4/5/17, ECF No. 56-3 at 22, 27). Staten reported that the back pain began after a use of force on February 15,

2017 (*id.*, Chronological Record of Health Care, dated 4/5/17, ECF No. 56-3 at 22).

The doctor diagnosed the condition as trauma to the cervical and lumbar spine (*id.*).

The doctor ordered x-rays and prescribed ibuprofen 600 mg (*id.*).

Staten received x-rays of his cervical spine and lumbosacral spine on April

12, 2017 (ten days prior to the use of force at issue here) (Motion for Summary

Judgment, Ex. B-2, Chronological Record of Health Care, dated 4/12/17, ECF No.

56-3 at 22, Radiology Interpretation, ECF No. 56-3 at 50–52).   The Radiology

Interpretation stated the following:

> C-SPINE 2V:
> Normal height of the vertebral bodies are seen with good alignment and
> position identified.  The intervertebral spaces are well maintained and
> no fracture, dislocation or acute findings noted.  Slight straightening
> raise the question of mild muscle spasm.
>
> IMPRESSION:
> No acute findings.
>
> LUMBO SACRAL SPINE 2V:
> Normal bone density is identified.  No fracture or dislocation is seen.
> No acute findings identified.
>
> IMPRESSION:
> No fracture, dislocation or significant abnormality noted.

(Motion for Summary Judgment, Ex. B-2, Radiology Interpretation, ECF No. 56-3

at 50).

On April 18, 2017 (four days prior to the use of force at issue here), Staten submitted a sick-call request complaining that he had submitted several sick-call requests complaining of intense pain in his back and neck, and that the ibuprofen 600 mg was not helping (Motion for Summary Judgment, Ex. B-2, Sick-Call Request, dated 4/18/17, ECF No. 56-3 at 21). Staten stated that the pain started on February 15, 2017 (*id.*). Staten was scheduled to be seen by medical staff the next day, but he refused (*id.*, Chronological Record of Health Care, dated 4/19/17, ECF No. 56-3 at 22).

On April 24, 2017, two days after the use of force, Staten submitted a sick-call request complaining that he had submitted several sick-call requests complaining of intense pain in his back and neck, and the ibuprofen 600 mg was not helping (Motion for Summary Judgment, Ex. B-2, Sick-Call Request, dated 4/24/17, ECF No. 56-3 at 18). Staten stated that the pain started on February 15, 2017 (*id.*). Staten was seen by a nurse the next day (*id.*, Back Pain Protocol, dated 5/25/17, ECF No. 56-3 at 16–17). Staten reported that his pain level was 4, and the pain started on February 15, 2017, following a use of force (*id.*). Staten reported that he had been provided ibuprofen and analgesic balm, but they did not work (*id.*). Staten indicated that Tylenol may decrease the pain (*id.*). The nurse provided Staten with eight packs of Tylenol 325 mg (*id.*).

On May 2, 2017, Staten submitted a sick-call request complaining of pain in his back and neck (Motion for Summary Judgment, Ex. B-2, Sick-Call Request, dated 5/2/17, ECF No. 56-3 at 15). Staten stated that the pain started on February 15, 2017 (*id.*). Staten was seen by a nurse on May 4, 2017 (*id.*, Back Pain Protocol, dated 5/4/17, ECF No. 56-3 at 13–14). Staten reported that his pain level was 5, and the pain started on February 15, 2017, following a use of force (*id.*). Staten reported that he had been provided ibuprofen, Tylenol, and analgesic balm, but nothing relieved the pain (*id.*). The nurse provided three packs of Tylenol 325 mg and ibuprofen 200 mg and instructed Staten to return to sick-call if the symptoms worsened or if new symptoms developed (*id.*).

On May 7, 2017, Staten was seen by a nurse regarding his complaint of abuse by prison staff (Motion for Summary Judgment, Ex. B-2, Chronological Record of Health Care, dated 5/7/17, ECF No. 56-3 at 12; Emergency Room Record, dated 5/7/17, ECF No. 56-3 at 41). Staten complained that the abuse occurred on February 15, 2017 (*id.*). The nurse noted no injuries and no signs or symptoms of distress (*id.*).

On May 15, 2017, Staten submitted a sick-call request complaining of pain in his back and neck (Motion for Summary Judgment, Ex. B-2, Sick-Call Request, dated 5/15/17, ECF No. 56-3 at 10). Staten stated that the pain started on February

15, 2017, that it had worsened, and that he was having back spasms (*id.*).  Staten was seen by a nurse the next day (*id.*, Back Pain Protocol, dated 5/16/17, ECF No. 56-3 at 8–9).  Staten reported that his pain level was 7, and the pain started four months prior (*id.*).  The nurse referred Staten's chart to a doctor for review and instructed him to return to sick-call if the symptoms worsened or if new symptoms developed (*id.*).

On June 14, 2017, Staten submitted a sick-call request complaining of intense pain in his back and neck (Motion for Summary Judgment, Ex. B-2, Sick-Call Request, dated 6/14/17, ECF No. 56-3 at 7).  Staten stated that the pain started on February 15, 2017, and worsened on April 22, 2017 (*id.*).  Staten was seen by a nurse the next day (*id.*, Back Pain Protocol, dated 6/15/17, ECF No. 56-3 at 5–6).  Staten reported that his pain level was 5, and the pain started on February 15, 2017 (*id.*).  The nurse noted that Staten was currently prescribed ibuprofen 600 mg, and instructed Staten to use analgesic balm and return to sick-call if the symptoms worsened or if new symptoms developed (*id.*).

On June 20, 2017, Staten submitted a sick-call request complaining of intense pain in his back (Motion for Summary Judgment, Ex. B-2, Sick-Call Request, dated 6/20/17, ECF No. 56-3 at 4).  Staten stated that the pain started on February 15, 2017 (*id.*).  Staten was seen by a nurse on June 26, 2017 (*id.*, Back Pain Protocol, dated

6/26/17, ECF No. 56-3 at 2–3). Staten reported that his pain level was 5–6, and the pain started on February 15, 2017 (*id.*). The nurse noted that Staten was currently prescribed ibuprofen and instructed Staten to limit his activity until the discomfort improved (*id.*).

On July 6, 2017, Staten submitted a sick-call request complaining of intense pain in his neck and back, and that his prescription for ibuprofen 600 mg was not relieving the pain (Motion for Summary Judgment, Ex. B-1, Sick-Call Request, dated 7/6/17, ECF No. 56-2 at 97). Staten stated that the pain started on February 15, 2017 and worsened after April 22, 2017 (*id.*). Staten was seen by a nurse the next day (Motion for Summary Judgment, Ex. B-1, Chronological Record of Health Care, dated 7/7/17, ECF No. 56-2 at 98–99). Staten reported that his pain level was 4, and the pain started on February 15, 2017 (*id.*). The nurse noted that Staten was currently prescribed ibuprofen 600 mg, and instructed Staten to limit his activity until the discomfort improved (*id.*).

Staten was again seen in sick-call by a nurse on July 10, 2017, for complaints of pain in his neck and lower back (Motion for Summary Judgment, Ex. B-1, Chronological Record of Health Care, dated 7/10/17, ECF No. 56-2 at 95–96). Staten reported his pain level as 5 (*id.*). The nurse instructed Staten to continue taking ibuprofen and referred Staten's chart to a doctor for follow-up (*id.*). Staten

was seen by a doctor on July 19, 2017 (*id.*, Chronological Record of Health Care, dated 7/19/17, ECF No. 56-2 at 93).  The doctor diagnosed the pain as "likely interspinous ligament strain" (*id.*).  The doctor continued Staten's prescription for ibuprofen and instructed Staten to perform exercises which may improve the pain by strengthening his abdominal core (*id.*, *see also id.*, Ex. B-2, Clinician's Order Sheet, dated 7/19/17, ECF No. 56-3 at 26).

Four months later, on September 7, 2017, Staten was seen by a nurse for a post-use of force examination (Motion for Summary Judgment, Ex. B-2, Emergency Room Record, dated 9/7/17, ECF No. 56-3 at 38–39).  Staten denied any pain or injury, and the nurse noted none (*id.*).

Staten filed this lawsuit on September 19, 2017 (ECF No. 1).

Staten was the subject of a use of force on September 26, 2017, and was seen by a nurse on that day for a post-use of force examination (Motion for Summary Judgment, Ex. B-2, Emergency Room Record, dated 9/26/17, ECF No. 56-3 at 36–37).  Staten did not report any pain or injury to his back or neck during the post-use of force examination (*id.*).  However, the next day, on September 27, 2017, Staten submitted a sick-call request complaining of pain in his back, neck, and shoulder (Motion for Summary Judgment, Ex. B1, Sick-Call Request, dated 9/27/17, ECF No. 56-2 at 82).  Staten stated that the pain began on September 26, 2017 (*id.*).  On

October 9, 2017, Staten submitted another sick-call request complaining of intense pain in his back and neck (Motion for Summary Judgment, Ex. B1, Sick-Call Request, dated 10/9/17, ECF No. 56-2 at 85). Staten stated that the pain started on February 15, 2017, worsened on April 22, 2017, and again worsened on September 26, 2017 (*id.*). Staten was seen by a nurse on October 10, 2017 (Motion for Summary Judgment, Ex. B-1, Back Pain Protocol, dated 10/10/17, ECF No. 56-2 at 83–84). Staten reported that his pain level was 7 (*id.*). The nurse noted that Staten was currently prescribed ibuprofen 600 mg and instructed Staten to limit his activity until the discomfort improved (*id.*). The nurse also referred Staten's chart to a doctor for follow-up (*id.*).

Staten was seen by a nurse for a post-use of force examination on November 24, 2017 (Motion for Summary Judgment, Ex. B-2, Emergency Room Record, dated 11/24/17, ECF No. 56-3 at 34–35). Staten did not report any pain or injury to his back or neck (*id.*).

On December 1, 2017, Staten was seen by a nurse for complaints of back pain (Motion for Summary Judgment, Ex. B-2, Back Pain Protocol dated 12/1/17, ECF No. 56-2 at 65–66, ECF No. 56-3 at 32–33). Staten reported his pain as level 4 (*id.*, Back Pain Protocol dated 12/1/17, ECF No. 56-2 at 65–66). Staten reported that a doctor previously told him that if the results of blood work in August of 2017,

showed that his kidney function was normal, he would receive stronger pain medication than ibuprofen 600 mg (*id.*).  The nurse provided Staten with ibuprofen 200 mg and analgesic balm, and referred Staten's chart to a doctor (*id.*).

On December 29, 2017, Staten submitted a sick-call request complaining of back pain and constant back spasms for two days (Motion for Summary Judgment, Ex. B-1, Sick-Call Request, dated 12/29/17, ECF No. 56-2 at 62).  Staten stated that the pain started on February 15, 2017, and worsened on April 22, 2017, and November 24, 2017 (*id.*).  Staten was seen by a nurse on January 4, 2018 (*id.*, Back Pain Protocol, dated 1/4/18, ECF No. 56-2 at 60–61).  Staten reported his pain level as 5, and reported that ibuprofen was not working, but he needed his prescription for ibuprofen renewed (*id.*).  The nurse provided analgesic balm and referred Staten's chart to a doctor (*id.*).

On January 23, 2018, Staten submitted a sick-call request complaining of pain and spasms in his lower back (Motion for Summary Judgment, Ex. B-1, Sick-Call request, dated 1/23/18, ECF No. 56-2 at 58).  Staten stated that the pain had been ongoing for nearly a year (*id.*), and that he had been taking ibuprofen 600 mg. until October 16, 2017, but he needed something stronger (*id.*).  Staten was seen by a nurse on January 25, 2018 (*id.*, Back Pain Protocol, dated 1/25/18, ECF No. 56-2 at 56–57).  Staten reported his pain level as 5 (*id.*).  The nurse referred Staten's chart

to a doctor for renewal of Staten's prescription for ibuprofen 600 mg, and provided Staten with ibuprofen 200 mg and analgesic balm (*id.*).

On February 6, 2018, Staten submitted a sick-call request complaining of lower back pain (Motion for Summary Judgment, Ex. B-1, Sick-Call Request, dated 2/6/18, ECF No. 56-2 at 54). Staten was seen by a nurse on February 9, 2018 (*id.*, Back Pain Protocol, dated 2/9/18, ECF No. 56-2 at 52–53). Staten reported his pain level as 5–6 (*id.*). The nurse referred Staten's chart to a doctor for renewal of Staten's prescription for ibuprofen 600 mg, and provided ibuprofen 200 mg and analgesic balm (*id.*).

Two weeks later, on February 19, 2018, Staten was seen by a nurse because he cut his toe on a fence in the recreation yard <u>while he was running</u> (Motion for Summary Judgment, Ex. B-1, Abrasion/Laceration Protocol, dated 2/19/18, ECF No. 56-2 at 50–51) (emphasis added). The nurse cleaned and dressed his wound and provided acetaminophen and Bacitracin ointment (*id.*).

On July 25, 2018, Staten submitted a sick-call request complaining of spasms in his lower back (Motion for Summary Judgment, Ex. B-1, Sick-Call Request, dated 7/25/18, ECF No. 56-2 at 26). Staten stated that the pain started on April 22, 2017 (*id.*). Staten reported he had been taking ibuprofen, but his prescription ran out and the pain was getting worse (*id.*). Staten was seen by a nurse on July 31, 2018 (*id.*,

Back Pain Protocol, dated 7/31/18, ECF No. 56-2 at 24–25).  Staten reported his pain level as 2, and that it was caused by "a couple uses of force" that occurred one year prior (*id.*).  The nurse provided ibuprofen 200 mg and instructed Staten to limit activity until his discomfort improved (*id.*).

    C.    <u>Discussion</u>

The medical evidence in the summary judgment record establishes that, following the use of force at issue in this case, Staten had two small lacerations on his face (one on his brow and the other under his lower lip), a swollen lower lip, and a hematoma on his forehead.  Staten admits that these injuries were fully healed within two weeks.  Staten additionally states he suffered pain in his genitals, but he admits that the pain lasted only a period of days.  These injuries are not more than de minimis.  *See, e.g.,* <u>Tate v. Rockford</u>, 497 F. App'x 921, 925 (11th Cir. 2012) (finding that "a laceration on [a prisoner's] forehead, several small abrasions and cuts, and a swollen right eye" are de minimis injuries).

With respect to Staten's allegation of back and neck pain, the summary judgment evidence demonstrates Staten suffered pain in his back and neck, and possibly a mild muscle spasm, <u>prior to</u> the use of force at issue in this case.  This is evidenced by the results of the x-rays taken on April 12, 2017, ten days prior to the use of force at issue, and Staten's own admissions—in his Sick-Call Requests and

statements to medical staff during examinations—that the back and neck pain began on February 15, 2017.

Additionally, although, Staten alleges the April 22, 2017 use of force worsened his existing pain (*see* Response to Motion for Summary Judgment, Ex. E, General Affidavit of Samuel Staten, ECF No. 66 at 50–51), the medical evidence demonstrates that Staten reported only <u>periodic</u> episodes of increased pain. When Staten initially complained of back and neck pain, prior to the instant use of force, he reported a pain level of 6. According to the medical evidence, during the fifteen-month period that followed the instant use of force, Staten reported a pain level higher than 6 on only two occasions: once on May 15, 2017, when he reported a pain level of 7; and once on October 10, 2017, when he also reported a pain level of 7, but this was <u>after</u> he was subjected to a separate and subsequent use of force, on September 26, 2017.[2]

Further, despite Staten's claims of worsening pain and his requests to medical staff for stronger pain medication, the treating medical professionals apparently found that no additional medical treatment was warranted (beyond the initial prescription for ibuprofen 600 mg and x-rays, both of which occurred prior to the use of force at issue in this case). And apparently by at least February of 2018,

---

[2] Staten does not allege that medical staff mis-documented his pain level.

Staten was pain-free enough to run around the recreation yard. Therefore, Staten's allegations of periodic worsening pain fail to edge his claim of physical injury over the de minimis threshold as a matter of law. *See, e.g.,* Quinlan v. Pers. Transp. Servs. Co., 329 F. A'ppx 246, 248–49 (11th Cir. 2009) (holding that § 1997e(e) barred pre-trial detainee's claims for compensatory and punitive damages; complaints of temporary chest pain, headache, and difficulty breathing while in transport van, as well as subsequent "continuous back pain in [his] lower back that periodically cause[d] [him] to walk hunched over," did not constitute more than de minimis physical injury required under § 1997e(e), because none of the conditions required immediate medical attention or evidenced physical injury besides discomfort) (unpublished but recognized as persuasive authority); Mann v. McNeil, 360 F. App'x. 31, 32 (11th Cir. 2010) (holding that § 1997e(e) barred inmate's claims for monetary damages; inmate's complaints of vague injuries to his back and scrapes and marks on his knees and legs did not amount to more than de minimis physical injury). *Cf.* Thompson v. Sec'y, Fla. Dep't of Corr., 551 F. Appx. 555, 557 n.3 (11th Cir. 2014) (plaintiff's allegations that he suffered continuing, severe physical pain and other symptoms that persisted for an extended period and required medical treatment may be sufficient to constitute more than a de minimis physical injury).

Staten has failed to either point to evidence in the record or present additional evidence sufficient to withstand a directed verdict motion at trial on the issue of whether the physical injuries he suffered as a result of the use of force on April 22, 2017, were greater than de minimis.  Therefore, Defendants are entitled to summary judgment on Staten's claims for compensatory and punitive damages against them in their individual capacities.

But that is not the end of the matter.  Defendants contend they are entitled to judgment on Staten's Eighth Amendment claims, because he is not entitled to <u>any</u> damages, including nominal damages (Motion for Summary Judgment, ECF No. 56 at 8–11).

"Nominal damages are appropriate if a plaintiff establishes a violation of a fundamental constitutional right, even if he cannot prove actual injury sufficient to entitle him to compensatory damages."  <u>Carey v. Piphus</u>, 435 U.S. 247, 255, 98 S. Ct. 1042, 55 L. Ed. 2d 252 (1978).  Thus, a prayer for nominal damages is not precluded by § 1997e(e).  *See* <u>Brooks</u>, 800 F.3d at 1307–08; <u>Smith v. Allen</u>, 502 F.3d 1255, 1271 (11th Cir. 2007).  Additionally, courts should liberally construe a pro se plaintiff's general prayer for relief as including a prayer for nominal damages. *See* <u>Hughes v. Lott</u>, 350 F.3d 1157, 1162 (11th Cir. 2003) (affirming district court's determination that pro se plaintiff's request for compensatory damages was barred

by § 1997e(e), but remanding case to district court to consider whether plaintiff's complaint could be liberally construed to request nominal damages); *see also, e.g.,* Boxer X v. Donald, 169 F. App'x 555, 559 (11th Cir. 2006) (holding that pro se plaintiff sought nominal damages when complaint requested compensatory damages and "any other relief the court deem[s] appropriate").

Unlike the plaintiff in Brooks, Staten did not expressly request nominal damages from any Defendant in either his initial Complaint or his Amended Complaint (*see* ECF No. 1 at 7; ECF No. 10 at 7).  *See* Brooks, 800 F.3d at 1307. Additionally, neither of Staten's pleadings include a general prayer for relief or a request for injunctive relief (*see id.*).  Nevertheless, Defendants concede that a factual dispute exists which would preclude summary judgment in their favor on Staten's excessive force claim (*see* ECF No. 56 at 11 n.2).  Considering this admission and Staten's pro se status, even though Staten's failure to show he sustained more than a de minimis physical injury limits his recovery to nominal damages against Defendants in their individual capacities, it does not, standing alone, mandate entry of summary judgment in favor of Defendants on Staten's excessive force claim.  *See, e.g.*, Logan v. Hall, 604 F. App'x 838, 840 (11th Cir. 2015) ("While a pro se plaintiff may not have requested nominal damages specifically in his complaint, in light of the liberal construction afforded pro se

pleadings, a district court should consider whether such damages are recoverable before dismissing a complaint.") (citing <u>Hughes</u>, 350 F.3d at 1162–63, and Fed. R. Civ. P. 54(c) ("Every other final judgment [besides default judgment] should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings.")); <u>Hale v. Sec'y for Dep't of Corr.</u>, 345 F. App'x 489, 492 (11th Cir. 2009) (affirming district court's dismissal of pro se plaintiff's compensatory and punitive damages claims under § 1997e(e), but holding that district court "failed to construe [the plaintiff's] pro se pleadings liberally" and thus erred when it found that pro se plaintiff was not seeking nominal damages, where plaintiff's operative pleading requested compensatory and punitive damages and injunctive relief)[1;] <u>Williams v. Brown</u>, 347 F. App'x 429, 436–37 (11th Cir. 2009) (affirming district court's dismissal of pro se plaintiff's compensatory and punitive damages claims under § 1997e(e), but remanding to district court to fully consider whether plaintiff's complaint should be liberally construed to request nominal damages, "especially considering that [the plaintiff] requested both monetary [compensatory and punitive damages] and injunctive relief and in light of Federal Rule of Civil Procedure 54.") (citing Fed. R. Civ. P. 54(c)).

---

[1] The undersigned viewed Hale's operative pleading on PACER and determined that Hale requested compensatory and punitive damages and injunctive relief.

Staten is advised that nominal damages are limited to a trivial sum, typically

$1.00.  *See* Whitfield v. Thompson, 165 F. Supp. 3d 1227, 1238 n.4 (S.D. Fla. 2016)

(noting "nominal damages do not generally exceed one dollar").

## III.    DISMISSAL OF OFFICIAL CAPACITY CLAIMS

Although Staten's excessive force claims for nominal damages against

Defendants in their individual capacities may proceed to trial, he may not recover

nominal damages against Defendants in their official capacities.   The Eleventh

Amendment is an absolute bar to suit for monetary damages by an individual against

a state or its agencies, or against officers or employees of the state or its agencies in

their official capacities.  *See* Edelman v. Jordan, 415 U.S. 651, 662–63, 94 S. Ct.

1347, 39 L. Ed. 2d 662 (1974).  Absent waiver or express congressional abrogation,

neither of which is present in this case, the Eleventh Amendment bars Staten's

claims for monetary damages, including nominal damages, against the individual

Defendants for actions in their official capacities.  Accordingly, to the extent Staten's

claims are interpreted as suing Defendants for monetary damages in their official

capacities, the claims should be dismissed pursuant to 28 U.S.C.

§ 1915(e)(2)(B)(iii).

## IV.    STATEN'S MOTION TO DISMISS

Staten contemporaneously filed a Motion to Dismiss Defendants' Motion for Summary Judgment with his Response to Defendants' Motion for Summary Judgment (*see* ECF Nos. 66, 67).  In the Motion to Dismiss, Staten contends the court should not grant summary judgment for Defendants, because (1) Defendants failed to provide signed responses to his interrogatories, (2) he has been unable to obtain affidavits or declarations from two inmates who allegedly witnessed the use of force, and (3) he is financially unable to obtain a copy of the transcript of his own deposition or copies of documents provided in response to his request for production (ECF No. 67).

Regarding the declarations from inmate witnesses, Staten could have obtained such declarations had he sought to do so during the discovery period.  Staten did not seek to obtain them until January 27, 2019, when he included a request to do so in his motion for extension of time to respond to Defendants' motion for summary judgment (*see* ECF No. 64).  The court granted Staten's request for additional time to respond to Defendants' motion, but denied his request to obtain inmate declarations, because it was untimely as the discovery period expired two months prior, on November 14, 2018 (*see* ECF Nos. 40, 65).  Additionally, Staten has not shown that any of these evidentiary materials are relevant to the sole issue presented in Defendants' motion for summary judgment (i.e., whether Staten suffered greater

than de minimis physical injury).  Furthermore, Staten was evidently able to obtain and present evidentiary materials relevant to the physical injury issue; indeed, he presented relevant evidentiary materials in the form of his own sworn declaration, sick-call requests, and medical records).  Therefore, Staten's motion to dismiss should be denied.

Accordingly, it is respectfully **RECOMMENDED**:

1.    That Defendants' Motion for Summary Judgment (ECF No. 56) be **GRANTED IN PART** and **DENIED IN PART** as follows:

a.    Summary judgment should be **GRANTED** in favor of Defendants on the issue of compensatory and punitive damages against Defendants in their individual capacities, and Plaintiff's recovery should be limited to nominal damages;

b.    Summary judgment should be **GRANTED** in favor of Defendants on the issue of monetary damages, including nominal damages, against Defendants in their official capacities; pursuant to 28 U.S.C. § 1915(e)(2)(B)(iii);

c.    Summary judgment should be **DENIED** to the extent Defendants seek judgment on Plaintiff's Eighth Amendment claims.

2.      That Plaintiff's Motion to Dismiss Defendants' Motion for Summary Judgment (ECF No. 67) be **DENIED**.

3.      That this case be recommitted to the undersigned for further pre-trial proceedings on Plaintiff's Eighth Amendment claims for nominal damages against Defendants in their individual capacities.

At Pensacola, Florida this 13<u>th</u> day of March 2019.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations may be filed within 14 days after being served a copy thereof. Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control. A copy of objections shall be served upon the magistrate judge and all other parties. A party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.**